DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals his conviction and sentence for rape and felonious assault, rendered on a jury verdict in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm, in part, and reverse, in part.
 {¶ 2} In the early morning hours of June 22, 2005, Toledo police and fire-rescue responded to a 911 call at an East Toledo apartment complex. On arrival, officers found *Page 2 
Andrea J. in the parking lot, injured and apparently in intense pain. After interviewing her and her mother, who was present, police arrested Andrea's boyfriend, appellant Tremon N. Benton.
 {¶ 3} Andrea J. was transported to a Toledo hospital where she told a sexual assault nurse examiner that the night before, when she came home to the apartment she shared with appellant, he suspected her of being unfaithful. Andrea J. told the nurse that when she denied this, appellant tore off her clothing and examined her underwear for evidence of her infidelity, in the process punching her in the chest. Andrea J. reported that appellant then threw her on a couch and began hitting her with a belt. Later he pushed her face against the wall and poured soda pop on her wounds. At one point, according to Andrea J.'s account to the nurse, appellant choked her into unconsciousness. Appellant then penetrated Andrea J. anally and, subsequently, orally. Andrea J. told the nurse that appellant made her get him a knife from the kitchen, which he held to her throat, threatening to kill her. According to what Andrea J. reported, this treatment continued until nearly 5 a.m., when appellant fell asleep. Once appellant was asleep, Andrea J. called her mother, who called 911.
 {¶ 4} On June 30, 2005, a Lucas County grand jury named appellant in a three count indictment, charging him with the rape, kidnapping and felonious assault of Andrea J. Appellant pled not guilty and the matter proceeded to a trial before a jury. Before trial, however, Andrea J. recanted her account of events and, at trial, testified for the defense. *Page 3 
 {¶ 5} At trial, the state offered, over appellant's objection, the testimony of Andrea J.'s mother and the sexual abuse nurse who examined her. Both recounted Andrea J.'s original accusations. The state also introduced contemporary photographs taken by the nurse examiner of the bruises, welts and other marks on Andrea J.'s body. Additionally, the state introduced a photograph showing anal tearing, which the nurse examiner testified was consistent with forcible anal penetration. The nurse examiner also testified that all of appellant's injuries were consistent with her account of the assault.
 {¶ 6} The only witness to testify for the defense was Andrea J. She explained the accusation that she made to her mother and the nurse examiner was a fabrication, invented to punish appellant for what she believed was a continuing liaison with an ex-girlfriend. Her injuries, Andrea J. insisted, were the result of "rough sex" which on this occasion included choking, slapping and the use of a belt: all wholly consensual, according to Andrea J.
 {¶ 7} The matter was submitted to the jury, which found appellant guilty of rape and felonious assault, but could not reach a unanimous verdict on the kidnapping. The court accepted the verdict and, following a presentence investigation, sentenced appellant to an eight-year term of incarceration for the rape, to be served consecutively to a two-year period of incarceration for the felonious assault.
 {¶ 8} From this judgment of conviction and sentence, appellant now brings this appeal. Appellant sets forth the following seven assignments of error: *Page 4 
 {¶ 9} "ASSIGNMENT OF ERROR I: The state's racially motivated peremptory challenge of an African American juror violated the Equal Protection Clause of the United States Constitution.
 {¶ 10} "ASSIGNMENT OF ERROR II: The prosecutor engaged in misconduct through his repeated demeaning comments to and about the victim who testified as a defense witness, and by commenting on her credibility during closing arguments.
 {¶ 11} "ASSIGNMENT OF ERROR III: The convictions were against the manifest weight of the evidence and were not supported by sufficient evidence, particularly if this Court agrees that hearsay was improperly admitted during the state's case in chief.
 {¶ 12} "ASSIGNMENT OF ERROR IV: The trial court erred by denying Benton's motion in limine, and continuing trial objections, seeking exclusion of the SANE nurse's testimony regarding statements made by the victim, and by otherwise admitting improper hearsay.
 {¶ 13} "ASSIGNMENT OF ERROR V: The trial court erred when it allowed the state to substantively change the indictment after the jury was impanelled.
 {¶ 14} "ASSIGNMENT OF ERROR VI: The trial court abused its discretion by not having a hearing on Benton's motion for a new trial prior to denying it.
 {¶ 15} "ASSIGNMENT OF ERROR VII: Benton's sentence was unconstitutional because the trial court improperly made findings of fact in not imposing the shortest possible sentence and ordering the sentences be served consecutively." *Page 5 
 I. Jury Selection {¶ 16} During jury selection, the state opted to exercise a peremptory challenge on one of two African Americans in the venire panel. Appellant's counsel responded with an objection to the challenge pursuant to Batson v. Kentucky (1986), 476 U.S. 79, noting that appellant is also an African-American. The court acknowledged the objection and requested that the state articulate a race neutral reason for the challenge. The state responded:
 {¶ 17} "Yes, judge. When I was asking about prior jury service she answered she served before. And I asked her if she could recall what happened. She indicated she had no recollection. And it was only three years. I got the impression that there was something wrong with that jury service and it's been bothering me ever since. And I discussed it with my detective and he agreed with me. I mean, she couldn't recall what happened three years ago. We had people up on this panel who were talking about cases they were on ten, twenty-five years ago that could recall what happened and she could not and that bothered me, sir."
 {¶ 18} Following argument, the court overruled appellant'sBatson objection. On appeal, appellant accurately notes that, in fact, the challenged venireperson's response was that her prior jury service was 22 years before, saying "* * * it's been a long time ago and I didn't remember, but I did go through it." The prospective juror's answer to the only other question asked of her — what constituted a "good juror" — was articulate and thoughtful, in appellant's opinion. *Page 6 
 {¶ 19} It is a violation of a defendant's right to equal protection of the law under the Fourteenth Amendment to the Constitution of the United States and Section I, Article 10 of the Ohio Constitution when he or she is tried before a jury from which members of the defendant's race have been purposely excluded. State v. Bryant (1995), 104 Ohio App.3d 512,516, citing Strauder v. West Virginia (1880), 100 U.S. 303, 305. It is similarly improper to exclude members of a defendant's race from the jury venire or to exercise a peremptory challenge to the impanelment of a juror solely because of race or the assumption that jurors of the same race as a defendant will be unable to render an impartial verdict. Id. at 516-517, citing Batson, supra, at 89, and Swain v. Alabama (1965),380 U.S. 202, 209-210.
 {¶ 20} The burden of showing that a peremptory challenge is being used to purposely exclude jurors because of race is the defendant's. Id. at 517. Batson sets up a three-part test to demonstrate a violation. It must first be shown that a member of a cognizable racial group has been excluded from the defendant's jury under circumstances that give rise to an inference that the exclusion was based on race. Id.; Batson at 96, as modified by Powers v. Ohio (1991), 499 U.S. 400, 412-413.
 {¶ 21} Once a prima facie case of racial discrimination is established, the burden of production shifts to the prosecutor to come forward with a race neutral explanation for his or her juror strike.Batson at 97; State v. Hernandez (1992), 63 Ohio St.3d 577, 581-582. The explanation need not rise to the level of a challenge for cause,Bryant at 517, or even be "minimally persuasive" or a plausible basis that the juror will be unable to *Page 7 
perform his or her duties. Id. at fn. 1, citing Purkett v. Elem (1995),514 U.S. 765, 767. At the second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York
(1991), 500 U.S. 352, 360.
 {¶ 22} Finally, the trial court must determine whether the defendant has carried his or her burden of proving that the exercise of the peremptory strike constitutes purposeful discrimination.Hernandez, 500 U.S. at 359. A trial court's determination in this regard will not be disturbed on appeal unless clearly erroneous.Bryant at 517; Hernandez 500 U.S. at 364-365; State v. Hernandez,63 Ohio St.3d at 583; State v. Cook (1992), 65 Ohio St.3d 516, 519.
 {¶ 23} In this matter, the prosecutor's explanation for his peremptory challenge, although premised on inaccurate information, was racially neutral. There is nothing in the record to suggest that this use of inaccurate information was pretextual. It is only when "implausible or fantastic * * * silly or superstitious" reasons are employed as pretexts for purposeful discrimination that the Constitution is offended.Purkett, 514 U.S. at 768. We should also note that neither the court nor opposing counsel attempted to correct the prosecutor's factual inaccuracy. On this record, we cannot say that the trial court's decision to overrule appellant's Batson challenge was clearly erroneous. Accordingly, appellant's first assignment of error is not well-taken. *Page 8 
 II. Prosecutorial Misconduct {¶ 24} In his second assignment of error, appellant insists that the prosecutor's statements and characterizations of defense witness Andrea J. during cross examination and on closing constituted prosecutorial misconduct.
 {¶ 25} The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, 165. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant."State v. Braxton (1995), 102 Ohio App.3d 28, 41.
 {¶ 26} If appellant failed to object to the prosecutor's actions or comments, they are analyzed under the plain error rule. State v.LaMar (2002), 95 Ohio St.3d 181, 204, 2002-Ohio-2128, ¶ 126. Plain error is found only in exceptional cases in order to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 95. Plain error will be recognized where, but for the error, the outcome of the trial would have been different. Crim.R. 52(B); State v.Wogenstahl (1996), 75 Ohio St.3d 344, 357, 1996-Ohio-219. If appellant objected to a comment and the court sustained the objection and *Page 9 
directed the jury to disregard the remark, the jurors are presumed to have followed that instruction. State v. Loza (1994), 71 Ohio St.3d 61,75, 1994-Ohio-409.
 {¶ 27} The comments about which appellant complains were directed to witness Andrea J. on cross examination and made about her during closing. Appellant complains that the prosecutor repeatedly addressed Andrea J. as "honey" and "young lady" and used the phrase "baby mama" several times. During closing, the state referred to Andrea J. as "the lying witness" and suggested, "We all know why she's lying." Appellant objected to none of this at trial.
 {¶ 28} Calling Andrea J. "honey" and "young lady" is inappropriate. These terms are demeaning and tend to suggest immaturity, detracting from the credibility of the witness. However, we cannot say that addressing the witness in this manner changed the result of the trial. "Baby mama" is colloquial, but hardly prejudicial. With respect to Andrea J.'s veracity, this was a legitimate subject for argument in closing, because the evidence clearly showed that she was being untruthful to someone: either on the stand or to police, her mother and medical personnel.
 {¶ 29} The prosecution made two other statements during trial for which objections were made and sustained. In each instance, the court instructed the jury to disregard. There is nothing in the record to suggest that the jury did not follow the court's instruction. Accordingly, appellant's second assignment of error is not well-taken. *Page 10 
 III. Weight and Sufficiency of Evidence {¶ 30} We shall discuss appellant's third and fourth assignments of error together. In his the third assignment of error, appellant maintains that there was insufficient evidence introduced at trial to support his conviction and that, in any event, even if the evidence submitted was sufficient, a guilty verdict was against the manifest weight of the evidence. This argument is strengthened, appellant submits, if this court agrees with his assertion that the trial court improperly admitted hearsay evidence, which is the topic of appellants' fourth assignment of error.
 {¶ 31} A finding of guilt may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J., concurring); State v. Jenks (1991),61 Ohio St.3d 259, *Page 11 
paragraph two of the syllabus. See, also, State v. Eley (1978),56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
 {¶ 32} The jury found appellant guilty of rape in violation of R.C.2907.02. In material part, the statute provides that "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C.2907.02(A)(2). "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 33} Appellant was also convicted of felonious assault in violation of R.C. 2903.11 (A). An offender commits felonious assault when the offender knowingly either:
 {¶ 34} "(1) Cause[s] serious physical harm to another or to another's unborn; [or]
 {¶ 35} "(2) Cause[s] or attempts] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 36} If the testimony of Andrea J.'s mother and that of the examining nurse is credited, appellant clearly caused Andrea J. to engage in sexual conduct with him by force or threat of force. With respect to felonious assault, again crediting the account of events placed in evidence via the nurse, Andrea J.'s mother and the investigating officer, fortified by the pictures of Andrea J.'s injuries, a reasonable juror could have concluded *Page 12 
that appellant intentionally caused Andrea J. serious physical harm. Accordingly, there was sufficient evidence to support the verdict. Moreover, again presuming that the testimony of nurse and Andrea J.'s mother was properly before the jury, there is no indication that the jury lost its way or that a manifest miscarriage of justice occurred.
 {¶ 37} Pivotal, then, is the question of whether the testimony of the nurse examiner and Andrea J.'s mother was properly before the court. This is the topic of appellants' fourth assignment of error.
 {¶ 38} A statement, other than one made by the declarant, offered in evidence to prove the matter asserted is hearsay, Evid.R. 801(B), and is generally inadmissible. Evid.R. 802. Exceptions to the rule are manifold.
 {¶ 39} At trial, the state offered the testimony of Andrea J.'s mother and the examining nurse to relate Andrea J.'s statements to them concerning the events of the morning of June 22, 2005. Offered to prove the elements of the offenses charged, the testimony from both witnesses was hearsay. Nevertheless, the court allowed the testimony of Andrea J.'s mother, concluding it fell within the "excited utterance" exception. Evid.R. 803(2). The nurse's testimony, the court concluded, was admissible as statements made for medical diagnosis and treatment. Evid.R. 804(4).
 {¶ 40} On appeal, appellant insists that the trial court abused its discretion when it allowed this hearsay testimony into evidence. Moreover, according to appellant, even if the rulings were properly within the parameters of the exceptions, their admission *Page 13 
constitutes a violation of the confrontation clause, pursuant toCrawford v. Washington (2004), 541 U.S. 36 and State v. Stahl,111 Ohio St.3d 186, 2006-Ohio-5482.
 {¶ 41} As with other evidentiary rulings, the determination of whether hearsay statements are subject to exception rests within the sound discretion of the court and will not be disturbed absent an abuse of that discretion. State v. Hand, 107 Ohio St.3d 378, 393, 2006-Ohio-18,¶ 92. An abuse of discretion is more than error in judgment or a mistake of law, the term connotes that the Court's attitude is arbitrary, unreasonable or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 42} Evid.R. 803(2) provides an exception to the rule excluding hearsay if the statement is an excited utterance: that is, concerning a startling event uttered while the declarant was still under the stress of excitement caused by the event.
 {¶ 43} "`Such testimony as to a statement or declaration may be
admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the *Page 14 
unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' (Emphasis sic)" State v.Taylor (1993), 66 Ohio St.3d 295, 300-301, quoting Potter v. Baker
(1955), 162 Ohio St. 488, paragraph two of the syllabus.
 {¶ 44} Over appellant's objection, the trial court permitted into evidence the statement Andrea J. made to her mother. While not "strictly contemporaneous with its exciting cause" this statement was reasonably proximate to the five hour beating Andrea J. received and the indicia was that Andrea J. was crying and in extreme pain during the time. On this, we cannot say that the court abused its discretion in permitting this testimony into evidence.
 {¶ 45} Evid.R. 803(4) provides an exception to the hearsay rule for:
 {¶ 46} "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 47} The trial court permitted introduction of Andrea J.'s statement to the nurse examiner under the medical treatment exception. On review, we cannot say that this determination was unreasonable. *Page 15 
 {¶ 48} Irrespective of the propriety of the court's evidentiary rulings, appellant insists that the statements brought into evidence through Andrea J.'s mother and the nurse examiner violate the Confrontation Clause of the United States Constitution. According to appellant, Andrea J.'s statements were "testimonial" and should have been excluded, pursuant to Crawford v. Washington, supra.
 {¶ 49} In Crawford, the United States Supreme Court held that out-of-court statements that are "testimonial" may not be admitted as violative of the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford at 53-54. The court expressly declined to define what is "testimonial," save, "* * * prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and * * * police interrogations." Id. at 68; see, also, id. at 52, discussing potential formulation of a definition.
 {¶ 50} When Ohio considered the issue, it adopted the "objective witness" test to determine whether a statement is testimonial:
 {¶ 51} "For Confrontation Clause purposes, a testimonial statement includes one made `under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" State v. Stahl, supra, at paragraph one of the syllabus, quoting Crawford at 52.
 {¶ 52} It is of interest for the purposes of the present matter that in Stahl the statements at issue were those of a rape victim to a sexual abuse nurse examiner at a unit much like the one here. TheStahl court found that such a unit's primary mission was the *Page 16 
care of its patient. Thus, statements made in the course of that care could not objectively be believed to be for trial and were, consequently, not testimonial. Stahl at 196-197, 2006-Ohio-5482,¶ 39-40.
 {¶ 53} With respect to Andrea J.'s excited utterances to her mother, appellant presents no argument as to in what manner Andrea J. could have objectively believed that these statements would be available for use at trial later. See, also, Stahl at 192-193; 2006-Ohio-5482,¶ 22-25.
 {¶ 54} Accordingly, appellant's third and fourth assignments of error are not well-taken.
 IV. Amended Indictment {¶ 55} Appellant was originally indicted for felonious assault as a violation of R.C. 2903.11(A)(2): physical harm by means of a deadly weapon. Immediately preceding trial, the state moved to amend this charge to reflect a violation of R.C. 2903.11(A)(1): causing severe physical harm.
 {¶ 56} Appellant's counsel objected to the amendment, stating that, had the substitution been made earlier, he might have sought an expert to determine whether Andrea J.'s injuries constituted serious physical harm. The court asked if counsel sought discharge of the impanelled jury or a continuance to consult an expert. After discussion with appellant, counsel informed the court that he sought neither a discharge of the jury, nor a continuance, but a dismissal of the disputed count. The court told counsel that this was not an option. Counsel advised the court that appellant expressly did not want a *Page 17 
continuance. The court then allowed amendment of the charge and the proceeding continued.
 {¶ 57} Crim.R. 7(D) provides:
 {¶ 58} "The court may at any time before, during, or after a trial amend the indictment * * * provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, * * * the defendant is entitled to a discharge of thejury on the defendant's motion, if a jury has been impanelled, and to areasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. * * *." (Emphasis added.)
 {¶ 59} The court offered appellant the remedy allowed by rule. That he elected not to accept a continuance, constitutes an express waiver of any error implicated therein. Accordingly, appellant's fifth assignment of error is not well-taken.
 V. New Trial Motion {¶ 60} Following his conviction, appellant moved for a new trial on the ground of juror misconduct. Appellant insisted that one of the jurors had overheard, during trial, a conversation between appellant's relatives in which they discussed his prior criminal *Page 18 
record. Appellant also asserted that the same juror, her husband and her son were drug customers of his. Appellant stated that he had beaten up the husband over a drug debt. The trial court denied appellant's motion without a hearing. In his sixth assignment of error, appellant maintains this constitutes error.
 {¶ 61} With respect to the conversation overheard, the juror involved brought the incident to the attention of the court during trial, but denied hearing any part of the conversation except reference to appellant's name. At this point, appellant's counsel indicated that he was satisfied with the juror's response.
 {¶ 62} Concerning appellant's postconviction motion, the juror submitted an affidavit, averring that her husband, from whom she was separated, was a drug user, but that the juror had no recollection of ever meeting appellant prior to the trial. The juror also stated that it was her vote that hung the jury on the kidnapping count.
 {¶ 63} A party cannot take advantage of an error that the party invited or induced to court to commit. State v. LaMar, supra, at 199, 2002-Ohio-2128, ¶ 102. Appellant during trial expressly waived any objection to this juror on the basis of the overheard conversation. With respect to whether the juror was one of appellant's drug customers, even were this true, it is information uniquely in the possession of appellant during voir dire and at trial. That appellant sought to exploit this information after conviction would invite error. Accordingly appellant's sixth assignment of error is not well-taken. *Page 19 
 VI. Sentencing {¶ 64} During sentencing, the court characterized the acts of which appellant was convicted as "brutal * * * calculated to produce physical pain" and "* * * one of the most brutal acts toward a woman I think that I have ever seen." As a result, the court found that, "* * * consecutive sentences are necessary to protect the public from future crime and to punish the defendant and that they're not disproportionate to the seriousness of his conduct and the danger he poses to the public." In his remaining assignment of error, appellant insists that these findings are among those disapproved in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, which had been announced only a week earlier. In passing, appellant also suggests that application of Foster to him may involve a retroactivity violation.
 {¶ 65} Foster held, at paragraph three of the syllabus, that R.C.2929.14(E)(4) and R.C.2929.41(A), requiring judicial findings antecedent to the imposition of consecutive sentences, was unconstitutional pursuant to Blakely v. Washington (2004), 542 U.S. 269. In this matter, the court, at that point unsure of the impact of Foster, expressly made those findings. Pursuant to Foster, this is error. Accordingly, appellant's seventh assignment of error is well-taken.
 {¶ 66} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to said court for resentencing pursuant to State v.Foster, supra. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expenses incurred in *Page 20 
the preparation of the record, fees allowed by law, and the fee for filing of the appeal is awarded to Lucas County.
JUDGMENT AFFRIMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J. CONCUR. *Page 1